AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 04 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   '19 MJ4337
One Apple iPhone )
FP&F No. 2019250100042903, Line Item No. 001 )
HSI, 880 Front Street, San Diego, CA )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 46 USC 70503 | PWID Controlled Substance On Board a Vessel |
| 8 USC 1324 | Alien Smuggling |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

HSI Special Agent Emanuel Ortega
Printed name and title

Sworn to before me and signed in my presence.

Date: 10/4/19

_____
Judge's signature

City and state: San Diego, CA                Michael S. Berg, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Emanuel Ortega, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices (collectively referred to herein at the Target Devices), and seize evidence of crimes, specifically violations of Title 46, United States Code, Section 70503 and Title 8, United States Code, Section 1324, as further described in Attachment B:

   a. One SENWA phone with Fines, Penalties and Forfeiture ("FP&F") No. 2019250100042901, Line Item (LI) No. 004, as further described in Attachment A-1 (hereinafter "Target Device 1");

   b. One Apple iPhone with FP&F No. 2019250100042902, LI No. 001, as further described in Attachment A-2 (hereinafter "Target Device 2");

   c. One Apple iPhone with FP&F No. 2019250100042903, LI 001, as further described in Attachment A-3 (hereinafter "Target Device 3"); and

   d. One Huawei phone with FP&F No. 2019250100042904, LI No. 001, as further described in Attachment A-4 (hereinafter "Target Device 4").

2. The requested warrants relate to the investigation and prosecution of Juan Antonio Castro-Osuna ("Defendant 1") and Sergio DIAZ-Hernandez ("Defendant 2") for importing approximately 322 kilograms (709.88 pounds) of marijuana from Mexico into the United States and bringing in six Chinese material witnesses. *See U.S. v. DIAZ-Hernandez et al*, Case No. 19-mj-03917 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Devices are currently in the evidence vault located at 880 Front Street, Suite 3200, San Diego, CA 92101.

3. The information contained in this affidavit is based on my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the

1

Target Devices, it does not contain all the information known by me or other agents regarding this investigation.

## BACKGROUND

4.      I am a United States Border Patrol Agent-Intelligence officer (a "BPA-I") within the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol (the "USBP"). I have been employed by USBP since June of 2009.

5.      I am currently assigned as a Task Force Officer with Homeland Security Investigations Marine Task Force.

6.      I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have received training in investigating alien smuggling activity, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States. I am also cross designated to conduct investigations of violations of Title 21 of the Unites States Code.

7.      I am currently assigned to conduct investigations of criminal violations relating to alien and narcotics smuggling. I have participated in numerous alien smuggling-related investigations, many of which involved the arrests of persons for alien smuggling offenses. In those cases, I conduct interviews with the arrested persons and their associates. Through theses interviews, I have gained a working knowledge and insight into the activities and operations of alien smugglers.

8.      During the course of my employment with USBP, I have participated in a number of investigations, including investigations that have resulted in criminal prosecutions. Additionally, I have made arrests; drafted affidavits for search and seizure warrants, arrest warrants, tracking warrants; prepared reports in state and federal proceedings; and provided sworn statements in state and federal proceedings

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their

SIM card(s)), such as the Target Devices here, can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts of alien smuggling, and/or import marijuana, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of illegal aliens, and/or the importation of marijuana, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, and/or the importation of marijuana, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in alien smuggling, and/or the importation of marijuana, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//

3

## FACTS SUPPORTING PROBABLE CAUSE

10. On September 12, 2019, at approximately 6:50 am, United States Coast Guard Cutter (USCGC) BLACKFIN encountered a vessel approximately ten (10) nautical miles west of Point Loma, San Diego, California. Shortly thereafter, USCG officers boarded the vessel to inspect carriage requirements. USCG officers encountered two males on the deck of the vessel, later identified as defendants Sergio DIAZ-Hernandez and Juan CASTRO-Osuna. Boarding officers identified DIAZ as the operator of the vessel at the time of boarding and CASTRO as the navigator and assistant. Both defendants identified themselves as Mexican nationals. USCG officers observed six additional individuals in the cabin. All six individuals identified themselves as Chinese nationals.

11. Boarding officers then commenced a basic initial safety sweep of the interior portion of the vessel and observed 30 bales containing a substance that tested positive for marijuana. The total weight of the marijuana is 322 kilograms (709.88 lbs).

12. All individuals and contraband were subsequently turned over to Homeland Security Investigations (HSI) Agents for further processing. The individuals, later identified as Lin Yan, Peng Zhao, Rong Chen, Jin Qi Chen, Yong Li Xiaon, and Xue Huazhong, were determined to be citizens of China seeking to enter the United States. All of these individuals stated that they were without lawful documents to enter or reside in the United States.

13. Defendants DIAZ and CASTRO were determined to be citizens of Mexico. Both DIAZ and CASTRO stated that they were without lawful documents to enter or reside in the United States.

14. After being read his *Miranda* rights, DIAZ admitted to operating the vessel and stated that he was going to be paid $6,000 to smuggle the Chinese nationals into the United States. DIAZ stated that he knew it was illegal to smuggle the Chinese nationals. DIAZ denied knowledge of the marijuana onboard the vessel.

15. After being read his *Miranda* rights, CASTRO admitted to navigating, operating and refueling the vessel. CASTRO stated to agents that he was unaware Chinese

nationals and marijuana were being smuggled on the vessel and claimed that he was going to pay $3,000 to be smuggled into the United States. However, CASTRO did state that at some point on the trip he observed the female Chinese national on the deck of the vessel. CASTRO stated that he threw the GPS device overboard before USCG boarding officers made contact. CASTRO stated DIAZ's mother in-law phone number was stored in his phone (**Target Device 1**), and that DIAZ would borrow his phone during the boat trip.

16. DIAZ and CASTRO were arrested and charged with violations of Title 46 USC 70501, Possession with Intent to Distribute on Board of Vessel, and Title 8 USC 1324, Bringing in or Attempting to Bring in Certain Aliens, and scheduled to be transported to Metropolitan Correctional Center on September 13, 2019.

17. At the time of his arrest, CASTRO was in possession of **Target Device 1**. Jin Qi Chen was in possession of **Target Device 2**. Xue Huaz Hong was in possession of **Target Device 3**. Peng Zhao was in possession of **Target Device 4**.

18. In light of the above facts, Defendants' statements, and my own experience and training, there is probable cause to believe that Defendants were using the **Target Device 1** to communicate with others to further the smuggling of illegal aliens and/or the importation of illicit narcotics into the United States, and the Material Witnesses were using the **Target Devices** to coordinate with their smugglers.

19. Further, in my training and experience, alien smugglers and narcotics traffickers may be involved in the planning and coordination of an alien and/or drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with defendants after their arrest to determine the whereabouts of the aliens and/or narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant 1 and Defendant 2, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Further alien smugglers are often in touch with the aliens being smuggled in the days and weeks leading up to the smuggling event. Accordingly, I

request permission to search the **Target Devices** for data beginning on August 14, 2019, up to and including September 14, 2019.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the subject's cellular telephones and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 46, United States Code, Section 70503 and Title 8, United States Code, section 1324. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1, A-2, A-3, A-4 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Emanuel Ortega
Homeland Security Investigations

Subscribed and sworn to before me this 4th day of October, 2019.

Hon. Michael S. Berg
United States Magistrate Judge

## ATTACHMENT A-3

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    An Apple iPhone

    Fines, Penalties and Forfeiture No. 2019250100042903, Line Item No. 001

    (the "Target Device 3")

The Target Device is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1, A-2, A-3, and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 14, 2019, up to and including September 14, 2019:

a. tending to indicate efforts of alien smuggling, and/or import marijuana, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of illegal aliens, and/or the importation of marijuana, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, and/or the importation of marijuana, or some other federally controlled substance, from Mexico into the United States;

      d.      tending to identify travel to or presence at locations involved in alien smuggling, and/or the importation of marijuana, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

      e.      tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

      f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of violations of Title 46, United States Code, Section 70503 and Title 8, United States Code, Section 1324.